IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JACQUELINE D. SMOTHERS                    :

                                          :

    v.                                    : Civil Action No. DKC 2006-0554

                                          :

CHEVY CHASE BANK and
ASB CAPITAL MANAGEMENT         :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case is a motion to dismiss filed by Defendants, Chevy Chase Bank, F.S.B. and ASB Capital Management, L.L.C. (ASB). (Paper 15).  The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the court will grant Defendants' motion to dismiss in part and deny it in part.  Plaintiff, Jacqueline D. Smothers, incorporated an amended complaint into her response in opposition to Defendants' motion.  (Paper 17).  The court will consider this paper to be a proposed amended complaint and, for the reasons set forth below, will direct the clerk to detach and file it separately as Plaintiff's amended complaint.

**I.  Background**

In the original complaint, Plaintiff alleged that Defendants, through the actions of Plaintiff's supervisors, discriminated against her based on race and retaliated against her for protected

activity under Title VII, 42 U.S.C. § 2000, *et seq*.  Specifically,

the original complaint states that:

> I am complaining about failure to be paid,
> promoted, equal treatment, slander, disparate
> treatment, retaliation, harassment, hostility
> and Constructive discharge.  I am an African
> American, who was hired by Chevy Chase Bank on
> March, 1998.  I applied for the position of
> Administrative Assistant II and was hired by
> the subsidiary company of Chevy Chase Bank,
> ASB Capital Management, on October 1998.  I
> was approached by Ms. Shelly Huss in April
> 2000, to apply for the Investment Associate
> position in her department.  I did apply and
> received the position of Investment Associate
> on June, 2000.  After accepting the position
> and making a complaint against Ms. Huss, who
> is white, I was stripped of some of the
> promises that were made to me when I accepted
> the position (promissory estoppels).  From
> July, 2000 until December 2005, I was made to
> do the same work as other employees, but at a
> much lower pay rate and less the benefits.  I
> was subjected to lack of promotions, unequal
> treatment, slander, disparate treatment,
> harassment, hostility which eventually lead to
> a constructive discharge.

Defendants moved to dismiss Plaintiff's action for lack of

subject matter jurisdiction, asserting that Plaintiff failed to

exhaust her administrative remedies before the Equal Employment

Opportunity Commission (EEOC).  Defendants also argued that

Plaintiff failed adequately to state a claim under Title VII.

Plaintiff incorporated an amended complaint into her opposition to

Defendants' motion to dismiss.  It alleges that "management failed

to give relief of discrimination, harassment and disparate

treatment when they were aware of it on several occasions," (paper

17, at 13) and claims that she suffered "deceit of promissory estoppels, racial discrimination, retaliation, disparate treatment, harassment, hostility, slander, and constructive discharge. . . ." (Paper 17, at 14).   The amended complaint contains many more factual allegations than Plaintiff's original complaint.   The following statement of facts is based on the factual allegations asserted by Plaintiff in the amended complaint.

Plaintiff, an African American, was employed by Chevy Chase Bank for several months in 1998 until she transferred to a position with ASB in October 1998.   She remained an employee of ASB until December 2005.   At the invitation of Shelly Huss, ASB's Vice President for Portfolio Management Systems, Plaintiff applied for and received a promotion within ASB to the position of an officer, with the title Investment Associate.   Plaintiff later took on many of the duties of another position, Lamp Manager/Trading Assistant, with the promise of a later pay increase.   Beginning in July 2001, Plaintiff complained to Ms. Huss's supervisor, Barney Buscemi, ASB's CIO and Managing Director, about Ms. Huss's supervision. Plaintiff alleges that Ms. Huss began harassing her based on her race after her initial complaints to Mr. Buscemi.   This harassment resulted in her demotion and the appointment of Ms. Lena Ballard as her supervisor.   Plaintiff was also placed on corrective review, allegedly as a result of the harassment, until December 7, 2001.

In February 2002, Plaintiff alleges that Ms. Huss modified Plaintiff's performance review, which had been prepared by Ms. Ballard, by adding negative comments.  Plaintiff again complained to management at this time.  Ms. Huss initiated a pattern of giving Plaintiff inaccurate instructions and criticizing her for following them, and sent "e-mails of criticism to all department heads and vice presidents of the company, which suggested that plaintiff was continuously making errors on accounts."  (Paper 17, at 4).  In 2003, two new Presidents were successively appointed, and Plaintiff again brought her complaints to the attention of each of them.  Daniel Mulvey, who became President near the end of 2003, restructured Plaintiff's supervision so that she reported to Lisa Lochner, but the harassment did not end.  Ms. Huss continued giving Plaintiff incorrect instructions and criticizing her for following them.  Other staff also refused to give Plaintiff access to materials necessary for her work, and Ms. Huss refused to assist Plaintiff in correcting errors in her work.

In October, 2004, after another complaint to the company President, Plaintiff's supervision was again reconfigured, so that she would once more work with Ms. Ballard, and both would be supervised by Ms. Lochner.  Plaintiff and Ms. Ballard began performing the same duties in February 2005, but Plaintiff continued to receive only half the pay Ms. Ballard received.

Plaintiff was also instructed to train Ms. Ballard in the area of work they were doing.

Between March and June 2005, Plaintiff learned that Naomi Stratton, Executive Assistant to company President Daniel Mulvey, had told temporary staff hired by ASB that Plaintiff was negative, had a bad attitude, and should be avoided. Plaintiff complained of this conduct to Ms. Lochner, and on September 14, 2005, also requested a copy of her job description on which her evaluations were based. In response, Ms. Lochner became angry and told Plaintiff that she didn't have one, and that a previous copy had been unofficial. Several weeks later, Ms. Lochner produced a draft job description with the title "Investment Support Associate (or Officer)." Plaintiff understood this to be different from the title of the position she had been promoted to in 2000.

During the same period, "[t]he trading staff would make derogatory remarks, give the plaintiff a hard time in responding with necessary documents or answers needed to do my work, or they just never responded." (Paper 17, at 8). Plaintiff also raised these complaints with Ms. Lochner, who refused to intervene. For example, on October 19, 2005, Terry McCubbin, a Trader of Investments, refused to help Plaintiff with a work-related question claiming he did not have time, but immediately assisted Ms. Ballard in correcting a similar discrepancy. Ms. Lochner was able to see this interaction, and again refused to intercede.

On October 25, 2005, Plaintiff overheard a conversation about her possible termination.  She complained, and another meeting involving the company President, Mr. Mulvey was held.  In this meeting, Mr. Mulvey refused to say whether Plaintiff would be fired.  Mr. Mulvey became angry and told Plaintiff that he had tried to help her, that there was a dark cloud around her, that he had been advised to fire her, and that he had refused because he wanted to help her but his patience with her had run out.  Plaintiff was advised by Maria Pitts, of ASB's personnel department, to visit a counselor from the Employee Assistance Program, who advised Plaintiff to look for a new job.  Plaintiff submitted a resignation letter to ASB on December 16, 2005, "after getting no relief from the continuous stress, constant harassment, disparate treatment, and [her] deteriorating health becoming an issue." (Paper 17, at 11).  Her resignation was accepted and her employment at ASB ended on December 19, 2005.

## A.  Administrative Proceedings

Plaintiff initiated her complaints of discrimination before the EEOC in October 2005.  She completed a Charge Information Questionnaire (the "Questionnaire") and submitted this document to the EEOC on October 26, 2005.  Plaintiff's responses in the Questionnaire allege that she was subjected to discriminatory harassment on a continuing basis and to retaliation based on an earlier internal complaint of discrimination.  (Paper 17, Ex. 5).

The EEOC returned a letter to Plaintiff, dated November 1, 2005, instructing Plaintiff to sign and date a Charge of Discrimination (the "Charge"), which had been prepared by the EEOC based on Plaintiff's responses in the Questionnaire. (Paper 17, Ex. 7). Plaintiff signed and returned the Charge on November 11, 2005. The allegations in the Charge are narrower than those in the Questionnaire, and included only allegations of discrimination. In the Charge, Plaintiff alleged that:

> On September 14, 2005, I requested a copy of my job description and requested a – promotion which was denied by Human Resources. My Supervisor began to harass me and I was subjected to a hostile working environment. I began my employment with this company in March 1998. I am currently employed in the position of Investment Associate.
>
> This employer has the requisite number of employees.
>
> In September 2005, this employer gave no reason for the disparity in treatment.
>
> I believe that I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended because of my race, Black, with respect to harassment.

(Paper 15, Ex. 1, at 3). The EEOC concluded its investigation without confirming Plaintiff's allegations, and issued a right to sue letter dated December 15, 2005. Plaintiff filed suit in this court on March 3, 2006, alleging employment discrimination and retaliation in the form of harassment.

## II.  Amended Complaint

The court will consider Plaintiff's opposition to Defendants' motion to dismiss, (paper 17), a proposed amended complaint. Plaintiff is entitled to amend her complaint once as of right, without leave of court, under Fed.R.Civ.P. 15(a) because no responsive pleading has been filed with respect to her original complaint.  Therefore, the clerk will be instructed to detach and file Plaintiff's proposed amended complaint as an amended complaint in this case.

Defendants argue that Plaintiff's proposed amended complaint fails to comply with the formatting requirements of Fed.R.Civ.P. 10(b), because it is not composed of numbered paragraphs, and Local Rule 103.6(c), because Plaintiff has not submitted "a copy of the amended pleading in which stricken material has been lined through or enclosed in brackets and new material has been underlined or set forth in bold-faced type."  Local Rule 103.6(c) explicitly allows the court to waive this requirement, and a waiver will be ordered in this case due to Plaintiff's pro se status.  While the amended complaint lacks numbered paragraphs as required by Rule 10(b), this defect does not significantly hinder analysis.  Defendants may make an appropriate motion if they are unable to respond to any claim in the amended complaint that remains.

## III.  Administrative Exhaustion

## A.  Standard of Review

Defendants style their motion to dismiss based on failure to exhaust administrative remedies as a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). Exhaustion of administrative remedies, however, is not a jurisdictional requirement. The United States Court of Appeals for the Fourth Circuit has observed that failure to exhaust administrative remedies is properly considered, to the extent that it requires consultation of evidence outside the pleadings, under the summary judgment standard established by Fed.R.Civ.P. 56:

> Although the district court accepted the College's characterization of the exhaustion issue as jurisdictional, it is in fact "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). For this reason, and because the district court considered materials outside of the pleadings, we treat the College's motion as a motion for summary judgment. *See Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 357 n. 4, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 995 (4th Cir. 1997). We review the grant of summary judgment de novo, viewing the disputed facts in the light most favorable to Edelman. *See Figgie Int'l, Inc. v. Destileria Serralles, Inc.*, 190 F.3d 252, 255 (4th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

*Edelman v. Lynchburg Coll.*, 300 F.3d 400, 403-04 (4th Cir. 2002).

In the present case, both parties rely on administrative filings made to the EEOC which were not attached to the complaint. As a result, Defendants' motion to dismiss for lack of subject matter jurisdiction will be construed as a motion for summary judgment.

**B.  Analysis**

Defendants argue that Plaintiff has failed to raise most of her current allegations properly before the EEOC. Defendants argue that based on the allegations raised in the Charge, Plaintiff has exhausted her administrative remedies only as to a claim of harassment by her supervisor on September 14, 2005. Defendants contend that Plaintiff has failed to exhaust her administrative remedies for claims of retaliation, continuing discriminatory conduct after September 14, 2005, or discriminatory conduct more than 300 days before Plaintiff's Charge was filed.

An individual cannot bring a private suit for discrimination under Title VII without first exhausting the administrative enforcement process available through the EEOC. *Chacko v. Patuxent Inst.*, 429 F.3d. 505, 508-09 (4th Cir. 2005) (citing 42 U.S.C. § 2000e-5(b), (f)(1)). Administrative exhaustion requires at least that the individual alleging unlawful discrimination "file an administrative charge with the EEOC within a certain time of the alleged unlawful act." *Id.* at 508. "[T]he factual allegations made in formal litigation must correspond to those set forth in the

administrative charge." *Id.* at 509. In addressing whether Plaintiff's claims have been administratively exhausted, it is necessary to determine, first, whether Plaintiff's assertions in the Questionnaire can be considered part of Plaintiff's charge of discrimination. After determining which allegations Plaintiff properly raised before the EEOC, it will be necessary to consider whether each of Plaintiff's Title VII claims corresponds adequately to those allegations.

Pursuant to 42 U.S.C. § 2000e-5(b), a charge of discrimination before the EEOC must be made "in writing under oath or affirmation." In this circuit, additional allegations made in a signed writing, but not verified under oath, are not part of a charge of discrimination later raised before the EEOC, and thus cannot be used to broaden the scope of subsequent litigation. *C.f. Edelman*, 300 F.3d at 406. In *Edelman*, the plaintiff had initially written a letter to the EEOC that was signed, but not under the penalty of perjury, alleging that he had been discriminated against based on gender, national origin, and religion. He later filed a charge of discrimination, made under oath, that alleged only gender discrimination. *Id.* at 402-03. The primary issue addressed by the United States Court of Appeals for the Fourth Circuit concerned whether the subsequent charge could relate back to the date of the original letter. After concluding that it could, the Fourth Circuit nonetheless dismissed the plaintiff's national origin and

religion claims because these claims had only been raised in the original letter and had never been verified under oath before the EEOC. *Id.* at 406.  Plaintiff's allegations in the Questionnaire are likewise signed, but not made under oath. (Paper 17, Ex. 5, at 1-2).  Therefore, Plaintiff exhausted administrative remedies, if at all, only through the November 11, 2005 Charge, without reference to the broader allegations asserted in the Questionnaire.

Plaintiff claims in her amended complaint that she was subjected to retaliation in the form of harassment.  Plaintiff alleged retaliation in her EEOC Questionnaire, (paper 17, Ex. 5, at 1-2), but did not repeat this allegation in her Charge. (Paper 15, Ex. 1, at 3).  Thus, Plaintiff has failed to exhaust her administrative remedies for any claim of retaliation that occurred before her EEOC Charge was filed. *See Sloop v. Memorial Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999) (dismissing Title VII retaliation claim because administrative charge alleged only discrimination).  If, however, what Plaintiff asserts is that she was subjected to harassment in retaliation for making her EEOC Charge in the fall of 2005, such a claim need not be administratively exhausted itself and can be raised for the first time before this court. *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992) ("a separate administrative charge is not prerequisite to a suit complaining about retaliation for filing the first

charge") (quoting *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989)).

Plaintiff alleges in her complaint and amended complaint that she was subjected to continuing harassment by her supervisors both before and after September 14, 2005. Defendant argues that Plaintiff's claims must be limited to claims based on events occurring solely on that date. "[T]he allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct." *Chacko*, 429 F.3d at 505 (citing *Dennis v. County of Fairfax*, 55 F.3d 151, 153, 156-57 (4th Cir. 1995)). The allegations asserted in a charge of discrimination are broadly construed, *id.* at 509, and a liberal reading of the language used in Plaintiff's charge reveals that she alleges both a single incident related to her request for a copy of her job description on September 14, 2005, and a pattern of harassing conduct by her supervisor. The Charge alleges that "My supervisor began to harass me and I was subjected to a hostile working environment." (Paper 15, Ex. 1, at 3). This language, read broadly, alleges a pattern of supervisor harassment over time. Furthermore, Plaintiff submits what appear to be the EEOC investigator's notes, which also suggest that a broader pattern of harassing activity was investigated. (Paper 17, Ex. 6). Plaintiff adequately asserted a claim of continuing harassment, and that claim was in fact investigated by the EEOC. Therefore,

Plaintiff has adequately exhausted her administrative remedies with respect to a pattern of discriminatory harassment by her supervisor before and after September 14, 2005.

Plaintiff alleges acts of discriminatory harassment in her proposed amended complaint occurring as early as 2000.  A plaintiff in a Title VII case must bring a charge of discrimination before the EEOC within 300 days after an alleged discriminatory action under 42 U.S.C. section 2000e-5(e)(1), if the discriminatory action alleged is a discrete action, "such as termination, failure to promote, denial of transfer, or refusal to hire."[1]  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).  Claims based on a hostile work environment due to harassment, however, inherently accrue not based on a single discrete incident of discrimination, but based on many incidents over time that might not be individually actionable.  *Id.* at 115-18 (2002).  Such a continuing hostile workplace claim "may appropriately extend even to acts that occurred before the relevant limitations period, [if] . . . the hostile work environment continued within the limitations period as well."  *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 292-93 (4th Cir. 2004).

---

[1] The limitations period for the administrative complaint is 300 days in this case, instead of 180 days, because in Maryland a state agency is authorized to investigate discrimination complaints for violation of state discrimination statutes concurrently with an EEOC violation.  *See White*, 375 F.3d at 292.

Plaintiff alleges that she was subjected to a continuing hostile work environment due to discriminatory harassment that continued at least into October 2005 and within 300 days before the filing of her Charge with the EEOC. (Paper 17, at 9-11). As a result, Plaintiff may rely on related incidents of harassment to prove this claim without regard to the limitations period. Plaintiff's claims for failure to promote and disparate pay, however, constitute allegations of discrete instances of discrimination. *White*, 375 F.3d at 293 (finding disparate pay to be a discrete act of discrimination not subject to continuing violation analysis); *Nat'l R.R. Passenger Corp.*, 536 U.S. at 114 (2002) (stating that failure to promote is a discrete act of discrimination independently subject to limitations period). As a result, each of these incidents must be proven based on events that occurred after December 30, 2004, the date 300 days before Plaintiff filed her Questionnaire with the EEOC.[2]   Thus, only

_____

[2]EEOC regulations allow a plaintiff to relate back to the filing date of a technically deficient charge if it meets certain criteria:

> [A] charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, including failure to verify the charge . . . . Such amendments . . . will relate back to the date the charge was first received.

29 C.F.R. § 1601.12. Plaintiff's Questionnaire constitutes a
(continued...)

Plaintiff's claims as to (1) hostile work environment; (2) retaliation after the filing of her EEOC Charge; (3) failure to promote after December 30, 2004; and (4) unequal pay after December 30, 2004, may proceed.

## IV.  Failure to State A Claim

## A.  Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Accordingly, a 12(b)(6) motion ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

In its determination, the court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510

---

[2](...continued)
technically deficient charge under this regulation, and the defect, failure to verify the charges under oath, may be remedied with relation back to the original filing date, in this case October 26, 2005.

U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  The court must disregard the contrary allegations of the opposing party.  *See A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969).  The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## B.  Plaintiff's Title VII Claims

Defendants assert that Plaintiff has failed to plead adequately her allegations of discriminatory and retaliatory harassment under Title VII.  Although a complaint in an employment discrimination case need only satisfy the "simplified pleading standard" of Fed.R.Civ.P. 8(a), *Swierkiewicz*, 534 U.S. at 513, a complaint still must "allege facts sufficient to state all the elements of her claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir.), *cert. denied*, 540 U.S. 940 (2003).

Plaintiff's amended complaint purports to contain Title VII claims for harassment, retaliation, failure to promote, and disparate compensation.

1.  **Harassment or Hostile Work Environment**

> To state a hostile work environment claim, [a plaintiff] must allege that: (1) she experienced unwelcome harassment; (2) the harassment was based on her . . . race . . . ; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer.

*Id.* (citing *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998)). Plaintiff's amended complaint alleges that she suffered unwelcome harassment by her supervisors.  She alleges that she was provided less assistance than other employees and was placed under special supervision, that her supervisors denied her increases in pay, that other employees were told not to associate with her, that employees refused to interact with her as necessary for job requirements or delayed in doing so, and that supervisors were alerted to Plaintiff's complaints and failed to intervene.  (Paper 17, at 6-11).  Plaintiff also alleges that this harassing conduct occurred because of her race.  (Paper 17, at 12-13).  The various forms of harassment alleged by Plaintiff are sufficiently severe to support an inference of an abusive atmosphere because they relate directly to her ability to perform her job.  *Hopkins v. Balt. Gas & Elec.*, 77 F.3d 745, 753 (4th Cir. 1996) (whether harassment is sufficiently severe depends on the totality of circumstances, including "whether it unreasonably interferes with an employee's work performance") (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)),

*cert. denied*, 519 U.S. 818 (1996).   Finally, because Plaintiff alleges harassment by her supervisors and alleges that it was reported to higher level supervisors without any resulting action, she alleges an adequate basis to impose liability on her employer.

## 2.  Retaliation

Plaintiff's amended complaint also asserts a Title VII retaliation claim.

> To prove a prima facie case of retaliation, [a plaintiff] must show that "(1) she engaged in a protected activity; (2) the employer took an adverse employment action against her; and (3) a causal connection existed between the protected activity and the asserted adverse action."

*Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 271 (4th Cir. 2001) (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir. 2001)).   Under the test recently articulated by the Supreme Court, adverse employment action in a retaliation case can include any conduct which "a reasonable employee would have found . . . materially adverse" and that might prevent employees from bringing claims of discrimination.  *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2415 (2006).   As to causation, Plaintiff must allege that the timing of the retaliatory action followed the protected activity.   "[T]he continuation of the alleged adverse action after the filing of a discrimination complaint [does] not, without more, support . . . causation."  *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 651 (4th Cir. 2002).

Plaintiff alleges that she was retaliated against for engaging in protected activity under Title VII, but does not specify when she believes retaliatory action was taken against her. (Paper 17, at 14, 16). As discussed above, a claim of retaliation may proceed only if the alleged retaliation occurred in response to Plaintiff's Charge, which was filed on November 11, 2005. The only allegation Plaintiff makes as to adverse conduct after this date is her general assertion that on December 16, 2005, she "submitted [her] resignation from [her] position at ASB Capital Management, effective December 31, 2005, after being unable to get any relief from the continuous stress, constant harassment, disparate treatment, and [her] deteriorating health becoming an issue." (Paper 17, at 11-12). Plaintiff has failed to state a claim of retaliation under Title VII because her amended complaint does not allege that she suffered retaliatory harassment after her Charge was filed with the EEOC. Plaintiff's claim for retaliation under Title VII will be dismissed without prejudice and she may seek leave of court to amend her complaint further to state a claim of retaliation, if she can allege acts of retaliation after and based on the filing of her EEOC complaint.

## 3. Promotion

Plaintiff also alleges that Defendants denied her a promotion because of her race. (Paper 17, at 6-7, 12). A claim of discriminatory failure to promote has four elements. The plaintiff

20

must show that (1) she is a member of a protected group, (2) she applied for a position, (3) she was denied the position, and (4) the denial took place because of discrimination.  *See Bryant v. Aiken Reg'l Med. Ctrs.*, Inc., 333 F.3d 536, 544-45 (4th Cir. 2003) (quoting *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998)), *cert. denied*, 540 U.S. 1106 (2004).  Defendants contend that Plaintiff does not allege that she applied for a promotion within 300 days before her Questionnaire was submitted to EEOC.  Plaintiff alleges in her amended complaint, however, that she requested a promotion and that her request was denied in March 2005.  (Paper 17, at 6-7). While thin, Plaintiff's allegations are adequate to withstand a motion to dismiss on her failure to promote claim.  She alleges that she is a member of a protected class, that she applied for a promotion to align her pay with that of others performing similar duties, that the promotion was denied, and that the denial was due to her race.  (*Id.* at 6-7, 12).

**4.  Unequal Pay**

Plaintiff also alleges that she was paid less than another employee for similar work because of her race.  (Paper 17, at 6-7, 12).  "To establish a prima facie case of racial discrimination with respect to compensation, the plaintiff must show that he was paid less than a member of a different race was paid for work requiring substantially the same responsibility."  *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1075 (5th Cir.

1981), *quoted in Gray v. Newlan*, No. 89-2830, 1990 WL 169224, at *2 (4th Cir. Nov. 6, 1990) (unpublished disposition).   Plaintiff alleges that she and Ms. Ballard, a co-worker and at times a supervisor of Plaintiff, performed the same duties beginning in February 2005, but that Plaintiff was paid substantially less. (Paper 17, at 6-7).   Plaintiff's allegations on this point are questionable, because she also alleges that Ms. Ballard was at certain times also acting as her supervisor, but these allegations are sufficient to withstand a motion to dismiss.   In light of the difficulty facing Defendants in responding to these allegations, however, Defendants' motion to dismiss will be interpreted as a motion for a clearer statement under Fed.R.Civ.P. 12(e).   Plaintiff will be directed to clarify the dates, if any, during which she alleges that she and Ms. Ballard performed the same duties for different pay.   Plaintiff will also be directed to clarify Ms. Ballard's race, which is unclear in the amended complaint.

**C.  Maryland Law Slander Claim**

Defendant asserts that Plaintiff has failed to state a claim for slander under Maryland law.   Based on the language of the complaint and the amended complaint, it is not clear whether Plaintiff intended to assert a claim of slander.

> To establish a prima facie case of defamation when the plaintiff is not a public figure, the plaintiff must prove: (1) that the defendant made a defamatory communication to a third person; (2) that the statement was false; (3) that the defendant was at fault in

communicating the statement; and (4) that the
plaintiff suffered harm.

*Samuels v. Tschechtelin*, 135 Md.App. 483, 544 (Md.Ct.Spec.App.
2000); *accord S. Volkswagen, Inc. v. Centrix Fin., LLC*, 357
F.Supp.2d 837, 843 (D.Md. 2005). "The 'fault' element of the
calculus may be based either on negligence or actual malice."
*Samuels*, 135 Md.App. at 544. However, "[a] statement which
disparages the business reputation of a plaintiff is one of the
categories traditionally considered to be defamation *per se*," and
as such damages are presumed if the plaintiff can show that the
statement was made with actual malice rather than mere negligence.
*S. Volkswagen*, 357 F.Supp.2d at 843-44. A showing of actual malice
requires "clear and convincing evidence[] that the defendant
published the statement in issue either with reckless disregard for
its truth or with actual knowledge of its falsity." *Samuels*, 135
Md.App. at 544 (quoting *Shapiro v. Massengill*, 105 Md.App. 743, 772
(Md.Ct.Spec.App.), *cert. denied*, 341 Md. 28 (1995)).

Plaintiff mentions slander in her allegations against
Defendants, and has alleged that defamatory statements regarding
her professional reputation were made to other employees of
Defendants, but she does not indicate explicitly how the statements
caused her harm or whether the statements were made with negligence
or reckless disregard for their truth. (Paper 17, at 7-8, 14). As
a result, Plaintiff will be directed to clarify her pleading as to
whether she is alleging a claim of slander. If she does allege

23

such a claim, she will also be directed to specify whether the speaker of the allegedly defamatory statements knew or should have known that they were false and whether the speaker was negligent or reckless as to the truth of the statements.

**V.   Conclusion**

For the foregoing reasons Defendants' motion to dismiss will be granted in part and denied otherwise.  The clerk will be directed to detach and file Plaintiff's amended complaint. Plaintiff will be directed to file a second amended complaint to clarify her allegations.  A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge